UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TANGOE, INC., | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| v. | : | |
| ANTHONY L. SPENCER, | : | |
| Defendant. | : | MAY 15, 2014 |

## VERIFIED COMPLAINT

The plaintiff, Tangoe, Inc. ("Tangoe"), by its attorneys, alleges for its complaint against the defendant, Anthony L. Spencer, on knowledge as to its own conduct and otherwise on information and belief, as follows.

### NATURE OF THE ACTION

1.  Tangoe brings this action against Anthony L. Spencer ("Spencer"), a former employee, for injunctive relief and money damages arising out of Spencer's actual and anticipated breach of: (a) his contractual non-compete and confidentiality obligations to Tangoe under an Employee Confidentiality Agreement (the "Agreement", annexed hereto as Exhibit A and incorporated herein by reference); (b) the Connecticut Uniform Trade Secrets Act; and (c) the Connecticut Unfair Trade Practices Act.

2.  In direct violation of his contractual obligations, Spencer has or will commence employment with a direct competitor of the plaintiff, AirWatch, LLC ("AirWatch"). Spencer's intention to now work for AirWatch creates a real and unavoidable risk that trade secrets and confidential and proprietary information of Tangoe that Spencer knows and possesses will

3438339v1

inevitably be used by Spencer and AirWatch to the commercial and competitive detriment of Tangoe. In the absence of injunctive relief, Tangoe will be inevitably harmed.

## THE PARTIES

3. Plaintiff Tangoe is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Orange, Connecticut.

4. Spencer is an individual residing in the State of Massachusetts and is a former employee of Tangoe.

## JURISDICTION AND VENUE

5. Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332 based on complete diversity of citizenship between the parties and because the value of the rights of the plaintiff implicated by the conduct alleged herein and the actual and potential loss to the plaintiff as a result of the defendant's unlawful conduct exceeds $75,000.

6. This Court has personal jurisdiction over Spencer pursuant to Conn. Gen. Stat. §52-59b(a)(5) because, during the course of employment with Tangoe, from 2010 through early 2014, the defendant regularly accessed and used Tangoe's computer network in Connecticut. This Court also has personal jurisdiction over the defendant pursuant to Conn. Gen. Stat. § 52-59b(a)(1) because Spencer transacts business within the state. For example, Spencer knowingly accepted a position of employment with a Connecticut company; traveled to Connecticut for business related purposes, including meetings and visiting Connecticut based customers; had continuous and ongoing contact with plaintiff in Connecticut regarding continued employment, performance related duties, and other human resources issues. Spencer was supported by and worked cooperatively with Tangoe's senior leadership, sales, customer service, marketing and research and development groups located in Orange, Connecticut on an extensive and continuing

basis throughout his employment with Tangoe. At the end of his employment, Spencer traveled to Orange, Connecticut for discussions with Tangoe's President and Chief Executive Officer to affirm his resignation.

7. Venue properly lies in this Court pursuant to 28 U.S.C. §1391 because this Court has personal jurisdiction over Spencer and much of the property at issue in this matter is resident on Tangoe's computer servers that are located in this judicial district.

## TANGOE'S MDM BUSINESS

8. Tangoe was founded in 2000 and is a global leader in communications lifecycle management solutions. It provides software, consulting, and technology-enabled managed services that help global organizations procure, manage, and control their fixed and mobile communications assets and their associated costs. Tangoe's Mobile Device Management ("MDM") solution is a comprehensive smartphone and tablet lifecycle management solution.

9. Through its MDM solution, Tangoe supports its customers' businesses around the world by providing fully managed solutions that permit its customers to understand, control, manage and secure their mobile communications systems in order to maximize value from their telecommunications services and reduce costs.

10. The MDM market is intensely competitive, and Tangoe frequently competes with other software and service providers for the same customer base across the United States and the world.

11. Tangoe has expended significant time and money to grow its MDM business and the goodwill associated with it. Tangoe's goodwill is and has been established and maintained through direct contact with customers and prospective customers via the company's employees.

3

12. Tangoe relies on the goodwill that it has established with its customers in order to stay competitive in the MDM market.

### TANGOE'S PROPRIETARY INFORMATION, CONFIDENTIAL INFORMATION AND TRADE SECRETS

13. Tangoe has, through its years of developing goodwill with its customers and its extensive familiarity with its customers' business operations and needs, established itself in the MDM market and formed long-lasting and stable business relationships with various customers.

14. Tangoe has also gained a detailed understanding of its existing and prospective customers' use cases and requirements for MDM products which allows Tangoe to deliver the optimal solution to that customers' wants and needs.

15. In addition, Tangoe's ability to provide a more comprehensive product offering is of utmost importance to its competitive position in the MDM market. Tangoe can provide its MDM customers with integrated solutions including, but not limited to, real time expense management. Tangoe differentiates itself from the competition, including AirWatch, by being an industry leader in both MDM solutions and in telecom expense management services or TEM, and bundling its MDM and TEM software and service solutions.

16. The specifics of Tangoe's MDM product line, product strategy, sales strategy, target market, trade secrets, and financial information are detailed in the Tangoe's internal proprietary and confidential information stored in Tangoe's offices and on secured network drives. Such information includes, but is not limited to, software specifications, software and product development plans and roadmaps, sales and marketing strategies, sales tactics for each individual sales prospect, pricing strategies and outcomes, customer contract terms and renewal dates, sales forecasts, sales numbers such as the dollar value of new MDM sales for various

periods, sales commission and incentive plans and structures, and general financial information related to Tangoe's MDM business, including revenue and cost information. ("MDM Data")

17. Tangoe has developed a product roadmap detailing its plans to develop new functionality for the product and to fix product weaknesses. The strategies captured in the roadmap are, in substance, Tangoe's twelve month development plan for the MDM product line.

18. Tangoe has also constructed an extensive existing customer database and prospective customer database to build its pipeline of pursuits.

19. Tangoe's detailed understanding of its existing and prospective customers' specifications and requirements, comprehensive MDM product offering, MDM Data, customer databases, product roadmap, and development strategy are its confidential information and were assembled over years of research and investigation and could not be readily duplicated by others without extraordinary effort and expense.

20. Tangoe's confidential information is crucial to Tangoe as it enables Tangoe to compete in the marketplace effectively. The confidential information is therefore extremely valuable to Tangoe in providing it with a competitive advantage. If they were able to procure Tangoe's confidential information, Tangoe's competitors such as AirWatch would find the information to be extremely valuable.

21. Tangoe has taken reasonable steps and has devoted substantial efforts to maintain and safeguard the confidentiality of its proprietary information. Tangoe guards its confidential information by employing various security measures with respect to its physical facilities and its computerized data. Tangoe also maintains internal policies and procedures concerning its confidential information and employs contractual agreements in order to protect its confidential information.

22. Among other things, Tangoe: limits access to its physical facilities to authorized guests who are required to sign in and who are escorted by a Tangoe employee while on the premises; enters into non-disclosure agreements with third parties with whom its confidential information may be shared; requires that each employee execute a confidentiality agreement and undergo training on the importance and application of confidentiality and security measures related to Tangoe's information and data; put in place employee policies that affirm employee obligations of confidentiality and that provide for disciplinary sanctions; controls access to Tangoe's computer network via password protection and via a protected virtual private network, limiting access to Tangoe's customer service and related technology and service platforms to those employees with a need to use those platforms in performing their job functions; and limits access to shared drives and other network information to permitted users, via password, who are granted rights based on the requirements of their jobs.

## DEFENDANT'S EMPLOYMENT BY TANGOE

23. In August 2010, Tangoe hired Spencer to be a "Senior Solutions Architect" in Tangoe's MDM business reporting directly to Tangoe's Senior Vice-President in charge Tangoe's MDM group, Wayne DeCesaris.

24. A Senior Solutions Architect is responsible for demonstrating the value of Tangoe's MDM solution to prospective and existing customers. In this role, the Senior Solutions Architect conveys the value of Tangoe's solution using their detailed technical knowledge of the product feature set, the telecommunications market and the application of best practices to match the product to the customers' needs. The Senior Solutions Architect is responsible for the business and technical assessment required to develop a solution that meets the customer

requirements. That solution is combined with an implementation strategy that will ensure that the customer derives value from the product in both the short and long term.

25. As a Senior Solutions Architect, Spencer: (1) was provided with detailed technical knowledge of Tangoe's MDM Solution, including access to all MDM Data; (2) engaged with existing and prospective customers; (2) was responsible for understanding a particular customer's specifications and requirements to best fit Tangoe's product offering to their desired outcomes; (3) understood product shortcomings and was responsible for communicating that information back to Tangoe's designers and developers; (4) developed win strategies for each sales prospect leveraging Tangoe's unique and specific application and service functionality. In substance, as a Senior Solutions Architect Spencer had a key role in developing the intelligence necessary to position, sell, and deploy Tangoe's product in the most effective manner, providing feedback on how to develop the product's future, and winning new business.

26. In or about August, 2010, in connection with his employment by Tangoe, Spencer executed the Agreement.

27. In executing the Agreement, Spencer acknowledged that he would be provided access to Tangoe's proprietary information in the course of the employment relationship.

28. With regard to such confidential information, Spencer agreed:

> I shall not ... either during my employment or at any time after my termination, disclose to any person, and shall use my best efforts to prevent the publication or disclosure of, any trade secret or other confidential information, including but not limited to any information, knowledge, know-how, data, records, inventions, whether written or otherwise and whether or not conceived, originated, discovered, or developed in whole or in part by me, not generally available to the public concerning the business, finances, policies, procedures, operations (including my compensation package and those of other employees, or information found in Tangoe's Employee Handbook) assets, liabilities, existing and/or prospective customer lists, transactions or affairs of the Company or of any of their respective customers or clients, or concerning any officer, director, employee, or agent by the Company, entrusted to me or arising or coming to my

7

knowledge during the course of my employment with Company or otherwise. I will not, except for Company use, copy, duplicate, transcribe, or in any way reproduce any Company documents or objects or remove them from the Company's office or facilities nor use any information concerning them except for the Company's sole benefit, either during my employment or thereafter. (Agreement, § Confidential Information, ¶1)

29.     Spencer further acknowledged and agreed:

All files, records, documents, lists of customers, correspondence, drawings, specifications, equipment, and similar items relating to the business of the Company, whether prepared by me or otherwise coming into my possession, shall remain the exclusive property of the Company and shall not be removed from the premises of the Company under any circumstances whatsoever without the prior written consent of the Company. I agree that upon my termination I shall immediately deliver to the Company all such property and shall not retain any copies. (Agreement, § Confidential Information, ¶2)

30.     The Agreement also includes a covenant not to compete with Tangoe:

I agree that during the period that I am employed by the Company and for a period of one (1) year thereafter I will not, without the express written consent of Company, either alone or in concert with others, directly or indirectly, own, be a partner in, operate, be employed by, act as an advisor, consultant, agent, officer, director, or independent contractor for any company in direct competition with Tangoe. (Agreement, § Non-solicitation/Non-competition, ¶1)

31.     In the Section entitled "Miscellaneous" of the Agreement, Spencer further acknowledged in paragraph 1 that "[i]n the event of a breach or threat of breach of any of the provision(s) of [the] Agreement, [Tangoe] shall be entitled to, in addition to other remedies and damages available, an injunction to restrain any such breach or threat of breach by me or all persons acting for and/or in concert with me."

32.     Spencer received extensive training in, and access to, Tangoe's MDM product and MDM Data. In addition, Tangoe devoted a significant amount of time to training Spencer on establishing and maintaining goodwill with existing and prospective customers. Tangoe trained Spencer on how to obtain and maintain customer loyalty, introduced Spencer to methods of

8

3438339v1

marketing designed to discover and recruit new customers and demonstrated to Spencer the means of educating new customers about the benefits of Tangoe's MDM products.

33. Spencer was tasked with updating and keeping current with Tangoe's prospective customer databases. Spencer was also responsible for crafting bespoke MDM solutions for a particular customers' application.

34. Spencer communicated with prospective and existing Tangoe MDM customers and was primarily responsible for the sales processes. Spencer was also responsible for initiating and maintaining customer relationships, anticipating and identifying customer issues and concerns, and proposing advice as appropriate. Spencer had direct contact with a number of Tangoe's largest MDM customers and was given access to a wide range of Tangoe's confidential and proprietary information. As such, Spencer was responsible for establishing and maintaining goodwill with Tangoe's customers on behalf of Tangoe.

35. In or around January 2014, Spencer was promoted to Director, MDM solutions with Tangoe where he continued in his role as a Solutions Architect, but also directed and coached other Solutions Architects.

36. As a Director, Spencer knew virtually everything about Tangoe's MDM product including intimate and detailed knowledge of Tangoe's product roadmap having played a key role in developing that roadmap. Spencer also had multiple Solutions Architects reporting directly to him both domestically and abroad. Spencer was the "go to guy" for Tangoe's MDM product line.

## SPENCER LEAVES TANGOE TO JOIN AIRWATCH

37. Spencer resigned from his employment with Tangoe and ceased employment on or about May 12, 2014.

3438339v1

38. Upon resignation, Tangoe reminded Spencer of his contractual obligations and demanded that he immediately cease and desist from taking any actions in breach of the Agreement.

39. In disregard of his non-competition obligations, Spencer told Tangoe that he will commence employment with AirWatch, a direct competitor of Tangoe in the MDM market.

40. Spencer will hold the title of Director of Implementation with AirWatch. In that role, Spencer will regularly communicate with AirWatch's MDM Solutions Architects

41. Given his role as a Director with Tangoe, Spencer will not be able to cordon off his knowledge of Tangoe's confidential and proprietary information and has or will inevitably disclose such information to AirWatch to Tangoe's detriment.

## COUNT ONE:     BREACH OF CONTRACT

42. Paragraphs 1 through 41, above, are repeated and re-alleged as if fully set forth herein.

43. Spencer has violated the Agreement by accepting employment with AirWatch, a direct competitor of Tangoe, within the one (1) year period following his employment with Tangoe.

44. Spencer's breach has damaged and/or interfered with, or will damage and/or interfere with, the established goodwill and business relationships Tangoe shares with its existing customers and is building with prospective customers.

45. Spencer will violate the Agreement by inevitably disclosing Tangoe's confidential information.

46. Tangoe has performed all of its obligations under the Agreement.

47. As a result of Spencer's conduct, Tangoe has been and will continue to be irreparably harmed and damaged unless such actions by defendant are immediately enjoined.

**COUNT TWO:  VIOLATION OF CONNECTICUT UNIFORM TRADE SECRETS ACT, CONN. GEN. STAT. §§ 35-50 et seq.**

48. Paragraphs 1 through 47, above, are repeated and re-alleged as if fully set forth herein.

49. Tangoe possesses certain trade secrets and confidential information with which Spencer is familiar, and which Spencer has a duty not to disclose outside of Tangoe.

50. Tangoe has expended substantial resources in developing and safeguarding its trade secrets for its exclusive benefit, and the information provides Tangoe with an advantage over competitors. These trade secrets derive independent economic value from the fact that they are neither generally known nor readily ascertainable by proper means by Tangoe's competitors, customers and others.

51. Spencer gained knowledge of these trade secrets by virtue of his employment with Tangoe.

52. If employed by AirWatch, Spencer will misappropriate and inevitably use and/or disclose the trade secrets of Tangoe for his own benefit or for AirWatch's in violation of Connecticut Uniform Trade Secrets Act ("CUTSA"), as codified in Conn. Gen. Stat. §§ 35-50 et seq..

53. CUTSA permits injunctive relief for the actual or threatened misappropriation of confidential and proprietary trade secret information.

54. Tangoe is thus entitled to injunctive relief prohibiting Spencer's misappropriation.

## COUNT THREE: VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUTPA"), CONN. GEN. STAT. §§ 42-110A ET SEQ

55. Paragraphs 1-54, above, are repeated and re-alleged as if fully set forth herein.

56. Tangoe is a person within the meaning of Conn. Gen. Stat. § 42-110a(3) and § 42-110g(a) is entitled to bring an action under CUTPA, Conn. Gen. Stat. §§ 42-110a et seq.

57. At all relevant times, Spencer was person acting in the conduct of trade or commerce within the meaning of Conn. Gen. Stat. §§ 42-110a et seq.

58. The foregoing actions of Spencer constitute unfair and deceptive acts and practices in the conduct of trade or commerce that are unethical, unscrupulous and offensive to public policy, and are a violation of Conn. Gen. Stat. § 42-110b(a). More particularly, Spencer will inevitably utilize Tangoe's confidential and proprietary information to his own benefit and to AirWatch's by unfairly competing with Tangoe in the MDM market.

59. As a result of the foregoing unfair and deceptive acts and practices, Tangoe has suffered an ascertainable loss within the meaning of Conn. Gen. Stat. § 42-110g(a) and has suffered damages in an amount to be determined at trial.

60. The foregoing actions of Spencer show calculated, deceitful and unfair conduct, and reckless indifference to the rights of Tangoe. Accordingly, Spencer is liable to Tangoe for punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a).

61. Tangoe is mailing a copy of this Complaint to the Attorney General of the State of Connecticut and to the Commissioner of Consumer Protection for the State of Connecticut, as required by Conn. Gen. Stat. § 42-110g(c).

3438339v1

WHEREFORE, Tangoe seeks:

1. A temporary restraining order, preliminary injunction and permanent injunction enjoining and restraining Spencer from violating the provisions of the Agreement;

2. Compensatory damages in such amount as are proven at trial;

3. Attorney's fees pursuant to the Agreement and as permitted by law;

4. Interest;

5. Statutory damages and attorney's fees pursuant to Conn. Gen. Stat. § 42-110g and Conn. Gen. Stat. § 35-50 et seq.;

6. Costs and any other such relief at law or in equity that the Court deems just and appropriate.

          PLAINTIFF,
          TANGOE, INC.,

      By: /s/ Glenn M. Cunningham
          Glenn M. Cunningham
          Federal Bar No. ct09995
          Shipman & Goodwin LLP
          One Constitution Plaza
          Hartford, Connecticut 06103
          Tel.: (860) 251-5722
          Fax: (860) 251-5218
          gcunningham@goodwin.com
          Its Attorney

3438339v1

## VERIFICATION

Thomas Reed duly certifies that he is the Vice President of Implementation, MDM for Tangoe, Inc., he has read the contents of the attached Verified Complaint, he is familiar with the contents therein, and he certifies that the contents of the Verified Complaint are true to the best of his knowledge, information and belief.

_____
Thomas Reed

STATE OF MASSACHUSETTS   )
                         ) ss.:
COUNTY OF MIDDLESEX      )

Subscribed and sworn to before me this 14 day of May 2014.

_____
Notary Public

3438339v1